SONG, et al, Respondents, v. SONG, Appellant.

(268 N. W. 905.)

(File No. 7908. Opinion filed September 21, 1936.)

*Van Slyke & Agor*, of Aberdeen, for Appellant.

*M. C. Lasell* and *Geo. W. Crane*, both of Aberdeen, for Respondents.

WARREN, J.  Daniel R. Song died intestate June 25, 1931, leaving surviving him his widow, the appellant Helen Song, and two children by a former marriage.  After divorcing his first wife, he remarried on June 9, 1930, living with his second wife a year and some days.  His children and his first wife had been living for some time at Oceanside, Cal.

Daniel R. Song was afflicted with an apparently incurable disease.  He sought relief at several places, and after returning from a visit to several hospitals, he was admitted to the St. Luke's Hospital in Aberdeen.  On the second night of his stay at the hospital he died.  It would appear from the record that a couple of days before his death he handed his wife the keys to the car, the room that they occupied, and the key to the trunk in which was contained their valuables.  Among the valuables there was money aggregating $10,000 in currency, a Liberty bond of $500, and some diamonds.  It would further appear that his wife, Helen Song, believing that when he turned over the keys to her at the hospital that he was turning over all of his property to her, therefore took charge of the property, paid funeral expenses, and proceeded to manage the property, even to loaning some of the money to relatives of the decedent.  It is her contention that the delivery of the key to the trunk and the room, under the circumstances as disclosed by the testimony, constituted a delivery to her of the

contents of the trunk, and that it constituted a gift during the lifetime of the deceased. After continuing the management of the property, Helen Song verified a petition for the probate of the estate in March, 1934. One of the respondents, Delbert Song, verified a petition for the probate of said estate, and both of said petitions were heard before the county court. In May, 1934, the county court appointed the surviving widow, Helen Song, as administratrix. She filed her inventory of the property of said estate, which disclosed that it consisted of a Hudson automobile and an undivided one-fifth interest of Daniel R. Song in the equity left in his mother's estate, valued at $500. A notice to creditors was also published. The trial court found no claims had been filed against the estate. In September, 1935, the county court, upon application, granted the usual widow's exemptions. It would seem that the widow, as administratrix, having failed to make an inventory of any other or further property, Delbert Song and June Song brought the present action in circuit court for the recovery of the property and also prayed that there be a full and complete disclosure of all the property and that the administratrix be required to deliver up the property to the court, and that the circuit court determine the ownership of the property. From an examination of the defendant's answer it would appear that she asked that the circuit court declare that Song had made an absolute gift of all moneys owned by him, including the Liberty bond and the diamonds, and that the same constituted a valid gift inter vivos, and that the property was delivered to the defendant during the lifetime of Daniel R. Song, and that she was the absolute owner thereof. The action was tried to the court upon the issues framed by the complaint and the answer, to determine the ownership of the property not accounted for in the county court. The court made findings and conclusions in favor of the plaintiffs to the effect that they were each entitled to a third of the property, and that there had been no gift of the property to the defendant during the lifetime of the decedent. The court made further findings and conclusions allowing all of the payments that the defendant had made for funeral and other expenses, and also certain attorney fees and county court administration fees, and, further, permitted the deduction of the widow's exemptions. Motion for a new trial was made, which motion for new trial was overruled. The defend-

ant has appealed from the judgment and order denying the motion for new trial.

■ The appellant by her assignments of error now insists that the circuit court did not have jurisdiction to try and determine the issues presented to it, and that by taking jurisdiction the circuit court deprived the county court of its original jurisdiction. We will therefore dispose of the jurisdictional queston at the beginning of the opinion. As the facts have been recited at considerable length, it will be unnecessary to make a further statement, excepting incidentally, in treating the jurisdictional question. This court in Welsh et al. v. Krause, 38 S. D. 264, 161 N. W. 189, 190, had occasion to deal with the jurisdiction of the circuit and county courts. While in that case this court was confronted with the assets of an estate consisting of real property, in this case we are concerned with personal property. In Welsh et al. v. Krause, supra, an action to quiet title was brought in the circuit court in an attempt to deprive the county court of its jurisdiction to probate a will. In that case the appellant contended that said statute conflicted with the provisions of section 20, article 5, of the Constitution, which reads the "County courts * * * shall have original jurisdiction in all matters of probate." In relation to this contention this court said:

"This language, while it is broad and comprehensive, does not purport to confer exclusive original jurisdiction in all matters in probate on the county courts, nor does it divest any other court of any probate jurisdiction it may have acquired or possessed at the time of the adoption of the constitution. Since the earliest times in this country, and in England as well, courts of equity have exerecised a limited jurisdiction in matters in probate, and this jursdiction is still retained by the federal courts. * * *

"By reason of the constitutional provisions conferring unlimited probate jurisdiction upon the county courts, and because of the statutes enacted pursuant thereto, it has become the settled policy of the law of this state that, except in special cases, all such matter shall, in the first instance, be adjudicated in the county courts; and this appears to be the· settled policy in nearly all the states of the Union. I Pom. Eq. Juris. §§ 346-352. At section 349 this learned author, in discussing that matter, says:

" 'Unless the case involves some special feature or exceptional circumstances of themselves warranting the interference of equity such as fraud, waste, and the like, or unless it is of such an essential nature that a probate court is incompetent to give adequate relief, or is one of which the probate court, having taken cognizance, has completely miscarried and failed to do justice by its decree, the courts of equity will refuse to interpose and to exercise whatever dormant powers they may possess, but will leave the subject-matter and the parties to the jurisdiction of· the statutory forum, which the Legislature plainly regarded as sufficient and intended to be practically exclusive. According to this theory, the courts of equity do not deny the existence of any jurisdiction over administrations; but they treat their own jurisdiction as auxiliary and supplementary, and not as concurrent, only to be exercised in the exceptional cases where the probate jurisdiction is confessedly inadequate, or has actually shown itself insufficient.' "

It will be observed that we made mention of "special cases," and further on in that opinion we used the term "Unless the case involves some special feature or exceptional circumstances of themselves warranting the interference of equity." The case before us falls within the exceptions as this is a "special case" and has "special features and exceptional circumstances" in this, that the administratrix did not disclose and make an inventory of the property that had come into her possession. Further, that she had at least neglected to comply with the statutes requiring the property to be inventoried and accounted for, which neglect amounted to a refusal to comply with the law. It is quite apparent that this neglect and failure to make the inventory and account for the property was made upon the theory that the property had passed to her by virtue of the keys being handed to her and the statement of the deceased at that time, and therefore it was unnecessary to account for the property and to submit it to the jurisdiction of the county court. We take it that such was the contention from the prayer in appellant's answer in which it is contended that the property was an absolute gift inter vivos, and in which the appellant asks the court to enter judgment in her favor and against the respondents. In dealing with facts involving the disposition of certain real and personal property in which the circuit court obtained jurisdiction, this court, in Jacquish v. Deming et al., 40 S. D. 265, 167 N. W.

157, 158, said: "The situation presented by the allegations of the complaint and the demurrer is, in legal effect, the same as though the estate of the decedent had been administered upon, debts paid in full, and heirship adjudicated; parties to the action being the sole heirs of the decedent. The demurrer admits that one of the heirs has taken and is in possession of the entire assets of the estate, both real and personal, and has had the use, rents, and profits thereof for a long period of time. The plaintiff demands an accounting therefor, and an adjudication of the rights and interest of plaintiff and all the other heirs. The probating of the estate would not render the rights of the heirs more effective, nor would it afford the full and speedy relief demanded and which can be administered in this action. We are of the view that the case involves circumstances so exceptional that the court should assume and exercise jurisdiction." It is therefore our opinion that this is an exceptional and a special case in which the circuit court was required to take jurisdiction, and that under the powers of our statutes it was not only warranted, but it was the duty of the circuit court to take jurisdiction, and having taken jurisdiction, it was vested with full power and authority to make a complete adjudication between the parties.

We have carefully examined the findings of the court and the record of the evidence, and believe that the court was fully justified in making the findings and conclusions that Daniel R. Song did not intend to vest said property in the appellant. Matejka v. Reider, 62 S. D. 335, 252 N. W. 878. While it might be desirable to set forth portions of the testimony relating to what occurred after Daniel R. Song entered the hospital up to the time of his death, yet it would unduly lengthen this opinion and would serve no useful purpose.

We have carefully examined all assignments of error and overrule the same, believing that the trial court should be, and it hereby is, sustained in making its findings, conclusions, and judgment.

The order and judgment appealed from are affirmed.

POLLEY, P. J., and ROBERTS and RUDOLPH, JJ., concur.

CAMPBELL, J., not sitting.