[File No. 6971]

EMELIE MUHLHAUSER, Mathilda Muhlhauser, Bertha Ell-
wein, Henry Gappert, August Gappert, Fritz Gappert,
Theodore Gappert, Raymond Gappert, Charlotte Gappert,
Augusta Borner, Emelie Holle Wolf, Henry C. Holle, Ab-
ner Larson, Special Guardian of Raymond Gappert and
Charlotte Gappert, Minors, and F. C. McCagherty, as Ad-
ministrator of the Estate of Frederick William Gappert,
Also Known as Fritz W. Gappert, Deceased, Appellants, v.
SELMA BECKER and George Gappert, Respondents.

(20 NW2d 353)

104

Opinion filed August 8, 1945. Rehearing denied Oct. 22, 1945.

*Sullivans, Fleck & Higgins* and *Floyd B. Sperry,* for appellants.

*J. K. Murray,* for respondents.

BURR, J. Variegated, vagarious and voluminous as is the record in this case the issue is simple. Does the county court in

the settlement of an estate, have jurisdiction to determine the execution, validity and extent of a contract alleged to have been made by the decedent for the benefit of third persons, whom, it is claimed, he agreed to adopt and make his heirs?

In Borner v. Larson, 70 ND 313, 293 NW 836, it is shown that Selma Becker and George Gappert, designated in this case, "respondents and appellees," appeared in the county court of Morton County in the matter of the administration of the estate of Fritz Gappert deceased, claiming to be entitled to select the administrator of the estate on the ground they were the adopted children of the decedent. The county court held against them on such contention. The district court reversed the county court; and on appeal to this court the district court was reversed and the decision of the county court upheld.

The decision in this case cited was based upon the fact these respondents and appellees failed to show they had been adopted by decedent. No record of adoption was introduced, no statutory adoption was had, and we held they had no right to select the administrator.

This decision sets forth there was a claim on the part of these respondents and appellees that they "must be considered the adopted children, because of what is alleged to be an executed contract for adoption." (p 321.) We state some of the foundations for this claim and specifically hold (p 322):

"This decision in no way determines that the respondents have no interest in the estate, and therefore, this matter is left undetermined. If proof of an executed contract to adopt is forthcoming, then the rights of the respondents thereunder *will be determined at the time of the settlement and distribution of the estate.*" (Italics here ours.)

Later, reference will be made to this italicized portion of the quotation.

The record in the case at bar shows, that when the matter of the settlement of the estate was thereafter before the county court the respondents and appellees herein offered proof to show this alleged contract for adoption and that the contract had been fully executed. Appellants here expressly asserted in

the county court "that such rights are contract rights which can be decided only by a Court of general jurisdiction." Over the objection of the appellants the county court passed upon the question, determined Fritz Gappert had entered into such a contract on behalf and for the benefit of these respondents, to adopt them and take them as his own children and the contract had been fully executed. Accordingly the county court decreed that these two were the sole heirs of Fritz Gappert, ordered distribution of the estate to them, and entered the decree of distribution.

Those of the petitioners and appellants herein who claimed to be entitled to the estate appealed to the district court from this decision setting forth various specifications of error among which is:

"That the County Court had not jurisdiction to make and enter the decree of August 7th, 1942, from which appeal is taken for the asserted reasons:

(a) . . .

(b) . . .

(c) That the County Court of Morton County has not jurisdiction to entertain petition for purpose or to decree any part or portion of the estate of Fritz (Gappert?) to respondents Selma Gappert Becker and George Gappert, or to entertain subject-matter of contract to adopt, or execution of such contract, even insofar as may be necessary to determine to whom the estate belongs and pass the estate to respondents: . . ."

The district court held that the county court had jurisdiction to determine whether there was any such contract to adopt and whether it had been fully executed.

The trial court found:

"that the matter of the jurisdiction of the County and District Court was before the Supreme Court in the case of Borner v. Larson (ND) supra. The matter contained in the administrator's brief and respondents' brief before the Supreme Court appears to demonstrate that such question was before the Supreme Court. This court cannot disregard and is bound by the statement in the case of Borner v. Larson(ND) supra, as fol-

lows: 'If proof of an executed contract to adopt is forthcoming, *then the rights of the respondents thereunder will be determined at the time of the settlement and distribution of the estate.'"* (Italics ours.)

It will be noted that this italicized portion is the italicized portion hereinbefore set forth.

The district court ruled that such excerpt from the opinion of this court must be interpreted as giving to the county court jurisdiction to pass upon the question of the existence, validity, execution and extent of this alleged contract to adopt and "became the law of the case."

When entering formal Findings of Fact and Conclusions of Law, consisting of twenty-eight typewritten pages drawn in the usual form, the court set forth therein Finding #11 as follows:

"That there is hereby made a part of these findings of fact the Memorandum Opinion made by the trial court on the 31st day of January, 1944 and consisting of pages 1 to 59 inclusive, being presented to respective counsel and filed herein, by reference thereto and with the same force and effect as if said Memorandum of Opinion were fully set out herein verbatim."

This Memorandum Opinion consists of fifty-nine typewritten pages and therein the court goes very exhaustively into the question of the power of the county court to determine the issue as to whether there was an executed contract to adopt, and holds it had such power.

It is necessary to make rather extensive excerpts from this Memorandum Opinion in order to ascertain the position of appellants. The Memorandum Opinion states "the question of jurisdiction is first for consideration and decision." The court, in the findings, sets forth that, in appealing from the order and decree of the county court distributing the estate, the appellants had attacked such order and decree on the ground the county court had no jurisdiction to determine any issue created by the claim of an executed contract for adoption and set forth the specification of error hereinbefore stated.

The district court passed upon the objection to the jurisdiction of the county court and ruled that the county court had

such jurisdiction, thus overruling the objection of the appellants and compelling the trial of the case. On this trial the district court found there was such a contract to adopt and affirmed the action of the county court.

From the judgment entered in the district court the parties herein named as plaintiffs and appellants appealed.

On the appeal to this court appellants set forth eleven specifications of error, the eighth and ninth of which are as follows:

### 8.

"That the court erred in denying said motion of the appellants, made upon the files and records in said appeal, at the beginning of the trial of said appeal, and in forcing the appellants to proceed with said trial, after the making of said motion, and erred in denying said motion, after all of the evidence had been taken in said matter, the record showing that the probate court had no jurisdiction to make said findings of fact, decision and order appealed from, and said district court having no jurisdiction over said matter, in said appeal, except to make an order reversing and vacating said findings of fact, order and decision of the probate court.

### 9.

That the County Court of Morton County in the probate proceedings relative to the estate of Frederick William Gappert and the District Court of Morton County on this appeal are both without jurisdiction to pass upon the existence, validity or effect of any contract of adoption of the respondents Selma Becker and George Gappert by the said decedent, for the reason that neither the County Courts in this State nor District Courts on appeal from the County Courts have authority to deal with the effect of contracts between the decedent and third parties not involving straight claims against the estate and the Court, therefore, erred in finding that it had authority to pass upon the said question."

This appeal is taken on the judgment roll alone and so the findings of fact as made by the trial court must be taken as cor-

rect. The issue is whether the judgment is supported by the findings.

If a county court has jurisdiction to pass upon such a question then the judgment of the district court must be affirmed. If the county court has no jurisdiction, does the record show that the appellants, though at first questioning the jurisdiction of the county court, waived this objection in the district court, conferred jurisdiction on the district court and submitted the issue to that court for determination?

The Memorandum Opinion, which is a part of the Findings, is dated January 31, 1944; the "Findings of Fact, Conclusions of Law and Order for Decree of Distribution" made by the district court (which included finding #11 making the memorandum opinion an integral part of the findings) are dated May 22, 1944, and on the same day the trial court granted a stay of proceedings for thirty days. The record shows also that on June 29, 1944 the trial court made an "amended decision, judgment and decree" which purports to amend the judgment, but made no amendment of the findings or the conclusions entered on May 22, 1944. In this "amended decision, judgment and decree" the court states:

"the trial having been duly convened in Court Chambers in the Memorial Building, at Mandan, North Dakota, J. K. Murray, appearing for the respondents, Selma Gappert Becker and George Gappert, and Sullivans, Fleck & Higgins of Mandan, North Dakota and Floyd B. Sperry, Golden Valley, North Dakota appearing for the appellants, *and the parties having appeared generally and having submitted to the jurisdiction of this Court,* and the respective parties having introduced testimony and the parties by their respective counsel having made oral arguments and having submitted their respective briefs, and the Court having taken the same under consideration . . . and the Court having made its Findings of Fact and Conclusions of Law and having ordered judgment and a decree herein, which decision, order and decree is amended and is as follows: etc." (Italics ours.)

Other than this general statement above quoted there is noth-

ing in the record to show the appellants ever submitted the case to the determination of the District Court with the intent and for the purpose of having the District Court determine the validity of the alleged contract for adoption. The trial court made no amendment of the Findings in this respect which state otherwise, and it is clear there was no conferring of jurisdiction. Hence we must determine the power and jurisdiction of the County Court to pass upon that issue.

There is no finding nor claim that these respondents were adopted by the decedent in accordance with the law of this state. When this matter was before us in 70 ND 313, 293 NW 836, no application for adoption and no decree of adoption was presented or even claimed. The findings in the case before us show clearly the theory of actual statutory adoption was abandoned and the rights of the parties rest entirely upon this alleged contract to adopt, said to be fully executed.

The constitution gives to the county court "exclusive, original jurisdiction in probate and testamentary matters"—but a county court is not vested with equity powers.

The trial court, as hereinbefore quoted, assumed that in the former opinion this court held the county court should hear and determine the issue of the rights under the contract and that this became the law of the case. But we merely pointed out these respondents were not precluded from asserting any rights they had under the contract. This could be determined later, and of course the settlement and distribution of the estate would be governed thereby. This court cannot confer jurisdiction upon any court. The constitution determines the extent of jurisdiction. It is needless to state that where a court has no jurisdiction of the subject matter, consent of parties does not confer jurisdiction.

That there is a difference between adoption had in accordance with statutory requirements and a mere contract to adopt is shown in Jordan v. Abney, 97 Tex 296, 78 SW 486. Therein the Texas court notes the rule that specific performance lies to enforce a verbal contract to adopt, and that the rights thereunder arise upon contract.

In law there is a vast difference between an act of adoption based upon the statutory proceedings and which result in a decree of adoption, and an alleged executed contract to adopt. As stated in Godine v. Kidd, 64 Hun 585, 19 NYS 335, 338, "Where, therefore, the act of adoption is based upon a contract, it is not the law or statute regulating adoption that is to prevail, but the law relating to contracts."

The findings show that this alleged contract to adopt is a contract made by the decedent for the benefit of third parties; that is, for the benefit of the respondents herein. It is a contract to be fully executed after his death, the basis for the claim being the decedent agreed to make them his heirs.

These claimants are, as stated in 2 Williston on Contracts, 1041, 1047, "donee beneficiaries," and the contract for their benefit is based upon a gift promise. The same principle is set forth in American Law Institute, Restatement, Contracts, Vol 1, § 135. This "gift promise in a contract creates a duty of the promisor to the donee beneficiary to perform the promise; and the duty can be enforced by the donee beneficiary for his own benefit."

Under the provisions of § 9–0204, Rev Code of 1943, "a contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it."

To determine the issues under such a contract as relied upon here all the parties interested in the estate must be joined in order to determine the issues fully. The administrator representing the promisor, and those who would otherwise take the estate are vitally interested in such matters. In order to determine fully the right of parties claiming under such a contract made for their benefit "it is obvious," as stated in 2 Williston on Contracts, 1151, "that all three parties should have an opportunity of litigating the question since all are interested in it, and it is desirable to have all concluded by the judgment."

The respondents are not heirs or legatees under a will. There is no will. They are not heirs under the law of succession, not being adopted. If their contention is established they are in

the position of equitable owners of the estate. Gappert contract-ed to adopt them and make them his heirs, they to live with him as his children and fulfill the duties of children, and if this were done he would make them his heirs. This is the alleged contract that was made for their benefit. According to their claim they fulfilled their part. He did not. They desire this contract established and enforced as made; and if this be done they be-come the owners of the estate.

The principle underlying such a proceeding as this is analo-gous to the principle underlying actions for specific performance. Indeed, a study of the instances where parties claim to share in an estate because of an alleged executed contract to adopt shows in a great majority of the cases the action was com-menced in specific performance. If Fritz Gappert agreed to adopt these respondents and make them his heirs, so that his estate would descend to them in the absence of a will, then the respondents could have resorted to an action in specific per-formance. This was the method adopted in Healey v. Simpson, 113 Mo 340, 20 SW 881. There an action in equity was com-menced for the specific performance of an agreement made by a man and his wife to adopt a certain child as their own, with the agreement that said child would "inherit from the estate of said parties—in the same manner and to the same extent as a child born of their union would inherit." In the opinion the court said: "the instrument of writing in question cannot oper-ate as an adoption, as it did not come up to legal requirements, but it can operate as a contract for adoption, which may, upon a proper showing, be specifically enforced in equity." In Price v. Wallace (CCA 1st) 242 F 221, the court says this rule set forth in Healey v. Simpson (Mo) supra, is a well-established rule. Later, in Nowack v. Berger, 133 Mo 24, 34 SW 489, 31 LRA 810, 54 Am St Rep 663, the court entertained an action in specific performance to enforce a contract made by a decedent to take, adopt, support—a certain child and to give such child a share in his estate.

The Missouri Court in numerous cases thereafter held that

such contract could be enforced in accordance with equitable principles. Grantham v. Gossett, 182 Mo 651, 81 SW 895; Buck v. Meyer, 195 Mo App 287, 190 SW 997; Thomas v. Maloney, 142 Mo App 193, 126 SW 522. Ln Kerr v. Smiley (Mo) 239 SW 501, where a deed of adoption was ineffectual because recorded in the wrong county it was held that specific performance will be granted of an oral contract to adopt, fully performed on the part of the children.

In Gall v. Gall, 64 Hun 600, 19 NYS 332, the court, speaking of the law of New York, states, "it is undoubtedly the settled law of this state that where a certain and definite contract is clearly established, even though it involves an agreement to leave property by will, and it has been performed on the part of the promisee, equity, in a case free from all objections on account of the adequacy of the consideration or other circumstances rendering the claim inequitable, will compel a specific performance."

In Hood v. McGehee (CC) 189 F 205, it is held that though under the law of Alabama children adopted according to the laws of foreign states could not take by descent property of the adopter in Alabama, so that these adoption proceedings were ineffectual in themselves, yet when they were accompanied by a "definite promise of the adopting parents to leave all or a part of their property to the adopted child . . . be specifically enforced against the heirs of the adopting parents."

In Van Dyne v. Vreeland, 11 NJ Eq 370, Van Dyne, when a child, had been taken by one Vreeland under a contract to treat him as his child, he had him baptized with the name Vreeland, called him "my adopted son John Henry V. Van Dyne," and thereafter Van Dyne was known as Vreeland. Some twenty-two years thereafter Vreeland conveyed all his real property to third parties without consideration, and afterwards died. The court held that Van Dyne could maintain an action in equity to have the third parties adjudged to hold the real property in trust for him; and in 12 NJ Eq 142, a decree to this effect was sustained.

In a suit against the estate for damages because of failure to make a will designating the respondents heirs the remedy at law may be inadequate. As suggested in 2 Williston 1051, "The only satisfactory relief is something in the nature of specific performance. The basis for equity jurisdiction is the same as in other cases of specific performance."

At the time respondents sought to enforce this contract to adopt it would be practically impossible to resort to an action in law. Pecuniary compensation would be inadequate or almost impossible. If there was an agreement to adopt, this agreement was breached years before the death of Gappert. The respondents could not be returned to the situation in which they were at the time the agreement was made. Under such conditions the Supreme Court of Montana, in Gravelin v. Porier, 77 Mont 260, 250 P 823, states that equity "will specifically perform agreement to adopt involving personalty and real property, only where injured party cannot be returned to situation in which he was at time agreement was made and pecuniary compensation would be inadequate or almost impossible of ascertainment in view of Rev Code 1921, § 10,613, subds. 4, 5." (The Montana Statute of Frauds.)

Here the one claiming to be the beneficiary under the contract to adopt commenced an action in the district court against the administrator to have him turn over to her all of the property of the estate after the payment of the debts and the expenses. She alleged and showed that she was only two years of age at the time the contract to adopt was made. In this case cited the contract was an oral one and it was claimed the statute of frauds prevented recovery because this was "an agreement that by its terms is not to be performed within a year" and the agreement was not in writing nor was any note or memorandum thereof. In the case at bar the findings show that this contract was in writing, was signed by Gappert and by the Children's Home on behalf of the children. Adoption was not had and so the respondents are required to enforce their rights in a court of competent jurisdiction—a court that has jurisdiction of such cases.

The right to specific performance is founded in equity. Bates v. Smith, 48 SD 602, 205 NW 661. In Thompson v. Waits (Tex Civ App) 159 SW 82, the court held: "A contract by which parties agree to leave a portion of their property to another . . . is enforceable in equity." See also Bridgewater v. Hooks (Tex Civ App) 159 SW 1004.

The county court has no jurisdiction to determine the validity of or rights under a contract made for the benefit of a third person. The county court has the right to say who are named in the will as heirs or legatees and what share the will provides. If a third party claims an assignment of said legacy or an assignment of an interest in the real estate, that matter is determined by another court. The county court has the right to say what share the widow or the children will get in the estate of an intestate under the laws of succession; but where one asserts a claim against the estate and it is disallowed by the county court, the rights thereunder are determined by another court.

The jurisdiction to determine whether a contract to adopt children was made, the extent and terms of such contract and whether it was executed by the one agreeing to adopt, is in a court of equity.

The respondents herein claim the right to the property based upon this contract, but in Goodin v. Casselman, 51 ND 543, 200 NW 94, we hold "the jurisdiction of the probate court does not extend to the determination of the rights in property left by a deceased, where such right does not depend upon heirship or will but on contract."

The respondent cited numerous cases in support of the contention that courts of equity will grant relief in matters of contracts to adopt a child, even though the adoption proceedings have not been carried out. This is not an issue in the case here.

Among the cases cited in support of the contention that the county court has jurisdiction to pass upon such contracts and determine their validity and scope is Barney v. Hutchinson, 25 NM 82, 177 P 890. But that action was brought in the district court for this purpose and the administrator, the surviving

spouse and others interested in the estate were made parties. The issue here was not involved.

The respondents cite the case of Re Biehn, 41 Ariz 403, 18 P 2d 1112, where one claiming to be the beneficiary of an executed contract to adopt made application to the superior court to have the probate of a will revoked, and to have specific enforcement of the contract on the ground that the execution of the will was obtained by undue influence and fraud and that she was the only heir. "She prayed for the specific performance of the agreement of adoption, and that the legatees and devisees in the will . . . be cited to show cause why the probate of the will should not be revoked . . . ." The opposing parties stipulated that she was "equitably adopted." This being so there was no issue upon the contract to adopt. There were numerous points raised in opposition to her claim, and determined in equity, but the constitution of Arizona—Art. 6, § 6—provides "the superior court shall have original jurisdiction in all cases of equity, and in all cases at law which involve the title to, or the possession of, real property; . . . of all matters of probate; . . . in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; . . . ." The situation in Arizona is analogous to what the situation would be here in case determinations of probate proceeding were within the jurisdiction of the district court. Thus the petitioner was in the superior court for all purposes. The respondents state "the proceedings were in County Court." In this they are in error. The proceedings were in the superior court at all times; or what we would term the district court. There is no separate probate court in Arizona.

The respondents cite the case Re Peterson, 22 ND 480, 134 NW 751. In this case cited one of the appellants claimed to be the son of the deceased and the respondents claimed to be the common-law wife and son respectively. On final distribution of the proceeds of the estate there was an issue between the administrator and the contesting parties as to who were the heirs and the county court held against the appellant and in favor of the alleged common-law wife. The only objection to the jurisdic-

tion of the district court was that there was a defective undertaking on appeal. A new bond was filed and a trial de novo was had in the district court. On appeal a trial de novo was demanded in this court. The question of jurisdiction of the county court was not involved. The decision of this court was in favor of the appellants and then this court ordered the case returned to the district court, to retain the case for trial as to the right of these appellants to inherit the estate. The case was not sent back to the county court. The respondents claim that the issue of the jurisdiction of the county court was raised in that case but a perusal of the rather lengthy opinions show they are in error therein. The issue was largely whether, on a trial in the district court on appeal from the county court, new evidence could be introduced so as to make it a trial de novo.

Respondents cite Re Firle, 197 Minn 1, 265 NW 818. That matter was first before the Minnesota Court in 191 Minn 233, 253 NW 889. In the first case one Firle claiming to be adopted, petitioned for his own appointment as administrator on the ground he was the adopted son of the deceased. He was opposed by others claiming to be heirs who desired the appointment of a third person. The probate court determined that Firle was the adopted son, next of kin and sole heir. No appeal was taken from that order or finding. At the time of the settlement of the estate and the hearing of the final report of the administrator, appellants filed written objections stating among other grounds that Firle was not the adopted son. The objections were overruled by the probate court, and the appeal to the district court was dismissed on motion, without a trial or hearing. On appeal to the Supreme Court the judgment of the district court dismissing the appeal from the probate court was reversed. In the second case, the one cited by respondents, the district court affirmed the decree of distribution made by the probate court awarding all of the estate to William Firle. In this case cited the Minnesota court states: "the cases heretofore decided by this court where this question has been at issue have been actions where the adopted child has sought to enforce specific performance of the oral contract. Such a contract will be en-

forced when the oral agreement is established by clear and convincing evidence."

The court does hold, however, that . . . the proceeding being one to establish heirship . . . if Firle was entitled to specific performance it would be inconsistent to hold that he "would not be able to establish his right to the estate because this is not such an action." The court therefore does hold that his status as an heir was properly before the probate court. The Minnesota statute, however, § 8379 Mason's Minn Stat 1927, provides that on hearing a petition for final settlement and distribution of an estate the probate court "shall determine who are entitled to the residue of the estate, and shall then or thereafter make its decree assigning such residue to the persons entitled thereto." No issue was raised as to jurisdiction as is raised here.

Respondents cite Northwestern Trust Co. v. Getz (Re Le Page) 67 ND 15, 269 NW 53. However, the issue there was the administration of a trust provided for in the will and the trustee petitioned the district court to supervise the administration. The will had been probated, and we held that it was necessary for the county court to construe the will preliminary to the distribution of the estate to the parties entitled thereto, "but its jurisdiction is limited to what is necessary to administer the estate." We cited in support thereof the case of Goodin v. Casselman, 51 ND 543, 200 NW 94, supra. We state specifically "while the county court has no equity jurisdiction this does not deprive the court of the right to apply the principles of equity in the determination of such matters as come within its jurisdiction. 'In administering the estate it applies equitable principles and exercises equitable powers. It has no independent jurisdiction in equity or at law in controversy between the representatives of the estate, or those claiming under it, with strangers claiming adversely, nor of collateral actions.' "

There are numerous other cases cited by respondents dealing with matters which are raised on the appeal but which are not necessary to determine.

As the county court had no jurisdiction to determine the

question involved, the appeal from the order of the county court did not confer jurisdiction on the district court (Arnegaard v. Arnegaard, 7 ND 475, 75 NW 797, 41 LRA 258) and there was no independent submission of the controversy to the district court.

Throughout this opinion at different places we have employed the expression used by the respondents herein—an executed contract to adopt. Strictly speaking an "executed contract to adopt" would be one carried out by both parties which would imply that the decedent had in fact carried out his agreement and adopted the respondents. We have shown that there was no adoption procedure employed, nor is there any claim on the part of the respondents that the decedent ever executed that part of his agreement. When respondents contend for "an executed contract to adopt" they are referring to an agreement which they say was fully executed on the part of the Children's Home and on the part of the children themselves; but not executed by the decedent.

The district court was in error in holding the county court has jurisdiction to determine the issues raised under the claim of this contract to adopt; in proceeding to determine the issue on appeal from the county court over the objection to jurisdiction interposed by the appellants; and in affirming the decision of the county court. Under the findings it is clear the judgment of the lower court must be reversed. The district court will enter decree setting aside the decree of distribution made by the county court.

CHRISTIANSON, Ch. J., and MORRIS, J., concur.

BURKE, J. (concurring specially). Upon the former appeal in this case I dissented, Borner v. Larson, 70 ND 313, 293 NW 836. The decision of the majority of the court in that case, however, settled the law to be applied to the determination of the questions presented here. This decision is consistent with the principles of law thus settled. Therefore I concur.

NUESSLE, J., concurs.

Burr, J. (on petition for rehearing). The respondents set forth two general grounds. The first deals with the holding as to the jurisdiction of the district court to determine the issue involved in the appeal from the order of the county court.

With reference to this it is sufficient to say the petition practically amounts to "a restatement or reargument of matters contained" in their brief and thus already decided. This matter was presented fully and argued strenuously. Under rule 16 such matter cannot be made a basis for rehearing.

The second point involves "the law of the case"; the claim being this was settled in Borner v. Larson, 70 ND 313, 322, 293 NW 836. This requires some clarification.

The doctrine of "law of the case" is based upon the theory of res judicata and necessarily applies to the issue determined. Certainty and orderliness require some such doctrine. As said in Wittmayer v. Security State Bank, 57 ND 934, 224 NW 303:

"Questions fairly raised and decided on a former appeal in the same action are not open for consideration on a subsequent appeal, they become the 'law of the case', and are binding upon the parties in all subsequent stages of the litigation."

In Jacobson v. Mutual Ben. Health & Acci. Asso. 70 ND 566, 570, 296 NW 545, 549, we say:

"The decision on the former appeal became, and is, the law of the case *and the questions then determined* are not subject to review on this appeal."

But such rule is applicable only to the question actually before the court and actually decided. In Bryson v. Crown Oil Co. 185 Ind 156, 112 NE 1, it is stated,

"The doctrine of the 'law of the case,' while conclusive, like a former adjudication as to all matters properly within its scope, cannot be invoked, except on questions which were actually presented and considered at the former trial, or on appeal from the judgment thereon."

In Walling v. Jersey Cent. Power & L. Co. 123 NJL 37, 7 A2d 865, 866, the court was confronted with the question as to the extent of a former decision and therein the court said, "To the extent of the decided issue that determination is, of course, con-

trolling; . . ." The court limited the application of the rule to the issue before it in the former case.

In St. Louis & S. F. R. Co. v. Conarty, 124 Ark 454, 188 SW 310, it is held: "Whatever is before the court on appeal, and disposed of, and only that, is the 'law of the case' on a second trial." This rule is stated in 5 CJS 1499, "It is a general rule that the decision of an appellate court is the 'law of the case' in further proceedings in the cause . . . in all subsequent stages of the action or proceeding . . . ." But the same authority (page 1503) shows this rule of "law of the case does not extend to matters not decided, even though the appellate court may have made some statements or remarks with respect thereto . . . ."

In Borner v. Larson, 70 ND 313, 293 NW 836, supra, the issue before the court was whether the appellees here were entitled to name the administrator of the estate of Fritz Gappert deceased; the claim being founded solely upon the theory they were the adopted children of the decedent. If the adopted children, they had the right to name the administrator. The record in that case showed "there was no evidence whatever showing compliance with the statutory requirements relative to adoption." Because of this they were not entitled to the administration of the estate. "Not being entitled to administration they are not entitled to name an administrator." This was the only matter determined.

The opinion however shows that during the proceedings and during the argument there were "general statements to the effect that the children were taken for adoption, and were to be adopted and to be treated as the children of the decedent." Because of this it was evident that those claiming to have been adopted were claiming an interest in the estate and we point out that "the question of the right to administer an estate and the question of an interest and share in an estate are, in this case, two separate and distinct matters." We say in the opinion: (page 322)

"This decision in no way determines that the respondents have no interest in the estate, and therefore, this matter is left

undetermined. *If proof of an executed contract to adopt is forthcoming, then the rights of the respondents thereunder will be determined at the time of the settlement and distribution of the estate."*

The claim of the respondents here is based upon this last sentence; that, in effect, we stated as the "law of the case" that the county court, at the time of the settlement and distribution of the estate, would determine the existence, validity and extent of this alleged "executed contract of adoption."

The "law of the case" is the determination of the court in regard to the issue that was before the court. The issue was not the existence of a contract to adopt or the rights of the respondents thereunder, but were they adopted children. This court was careful to show there was nothing in the opinion to preclude them from asserting any interest they might have in the estate —this assertion to be in proper form and at the proper time. In the sentence relied upon, there is no holding that the county court could determine the issues arising upon the claim of an executed contract to adopt.

In Hudson v. Riley, 114 Kan 332, 219 P 499, the court in its syllabus states:

"Nor did any ruling or comment made in the decision of a former appeal from the granting of a motion for a new trial of the case become res judicata as to the facts developed on the second trial, and, even if an erroneous view had been taken, it would still be competent for the court to correct the error, where it can be done before the litigation is finally terminated."

In Breuer v. Arenz, 209 Wis 435, 245 NW 116, the court makes reference to a former opinion on the same subject. The Wisconsin court had made a statement as to the position which the plaintiff might be required to take, or could take, in a subsequent action, and in the second case it was claimed that such statement became a part of the "law of the case" and was, "Res adjudicata upon the question of whether an expressed contract existed between the parties, as it is claimed that the decision on the appeal in that case adjudicated the non-existence of any

such contract, as a result of which the present judgment is without any basis or foundation."

However the court said:

"There is certain language in the opinion which, taken by itself, suggests the conclusion of this court that the only theory upon which the plaintiff could recover was that of liability for money had and received. However, the judgment of the court remanded the case with directions to grant a new trial. The judgment of the court did not limit the new trial to the cause of action stated for money had and received. Moreover, the opinion taken as a whole reveals no intention on the part of this court to so limit the new trial, nor does it indicate the conclusion of this court that the plaintiff had no cause of action upon express contract."

The situation which confronted the Wisconsin court in the second case is similar to the one here. The issue as to the effect of an agreement to adopt was not before this court in the first case and it is clear this court was not laying down any rule as to how or where interested parties could present proof in regard to any claim which they may have had.

From a casual reading of that sentence standing alone, the respondents inferred the rights to be determined "at the time of the settlement and distribution of the estate" might be determined by the county court. From this slender thread the respondents suspend their claim they had the right to assume this was the "law of the case" laid down in Borner v. Larson, 70 ND 313, 293 NW 836. But even such casual reading of the opinion should show this was not the issue before the court, it was not the matter determined and therefore any such implication drawn from the sentence could not be "the law of the case."

The petition is denied.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE and MORRIS, JJ., concur.